IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

KENNETH EARL HARMON,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. C13-2022

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   PRIOR PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      A.   Harmon's Education and Employment Background . . . . . . . . . . . 5
      B.   Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . . . . 5
           1.   Harmon's Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . 5
           2.   Vocational Expert's Testimony . . . . . . . . . . . . . . . . . . . 7
      C.   Harmon's Medical History . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.    CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
      A.   ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . . 12
      B.   Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . . 15

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VII.  ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Kenneth Earl Harmon on March 19, 2013, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title XVI supplemental security income ("SSI") benefits. Harmon asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide SSI benefits. In the alternative, Harmon requests the Court to remand this matter for further proceedings.

## II. PRIOR PROCEEDINGS

Harmon applied for SSI benefits on March 11, 2010. In his application, Harmon alleged an inability to work since April 1, 2004 due to a head injury and nerve damage in both of his hands and wrists. Harmon's application was denied on July 12, 2010. On December 6, 2010, his application was denied on reconsideration. On December 30, 2010, Harmon requested an administrative hearing before an Administrative Law Judge ("ALJ"). On March 7, 2012, Harmon appeared via video conference with his attorney before ALJ David G. Buell for an administrative hearing. Harmon and vocational expert Jeff L. Johnson testified at the hearing. In a decision dated April 20, 2012, the ALJ denied Harmon's claim. The ALJ determined that Harmon was not disabled and not entitled to SSI benefits because he was functionally capable of performing his past relevant work as a poultry eviscerator. Harmon appealed the ALJ's decision. On January 19, 2013, the Appeals Council denied Harmon's request for review. Consequently, the ALJ's April 20, 2012 decision was adopted as the Commissioner's final decision.

On March 19, 2013, Harmon filed this action for judicial review. The Commissioner filed an Answer on May 28, 2013. On June 28, 2013, Harmon filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing his past relevant work

as a poultry eviscerator. On August 27, 2013, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On September 5, 2013, Harmon filed a reply brief. On April 15, 2013, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision

3

"extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Harmon's Education and Employment Background

Harmon was born in 1964. He is a high school graduate. At the administrative hearing, Harmon stated that while in school, he was enrolled in special education and resource classes. He also testified that he has difficulties with reading comprehension.

The record contains a detailed earnings report for Harmon. The report covers the time period from 1979 to 2011. From 1979 to 1985, Harmon had minimal earnings (less than $1,715), including no earnings in 1980 and 1983. From 1986 to 2005, he earned between $429.20 (2005) and $19,690.97 (1993). He had no earnings from 2006 to 2008. In 2009, Harmon earned $826.79, and $2,238.05 in 2010. He had no earnings in 2011.

### B. Administrative Hearing Testimony

#### 1. Harmon's Testimony

At the administrative hearing, the ALJ asked Harmon what he thought was the "biggest obstacle" to him holding down full-time employment. Harmon responded that in the past he had difficulty working at jobs because he was too slow and performed his duties incorrectly. Specifically, Harmon stated "I guess -- mainly the jobs that I've had, you know, I just didn't really understand, you know -- I guess that's what I'm trying to say."[1]

Harmon's attorney also questioned Harmon. Harmon's attorney inquired about Harmon's physical limitations. Harmon explained that he has difficulty standing for long periods of time and reaching due to back, shoulder, and arm pain. Harmon's attorney further inquired about specific limitations on Harmon's functional abilities:

> Q:    So in terms of walking, how far can you walk?
> A:    It would probably be -- say around a block, a block and
>       a half, I get tired, and my legs and back hurt, so I have
>       to, you know, just stop and sit down. . . .

---

[1] Administrative Record at 50.

| Q: | Do you have problems gripping things? Holding onto things? |
|---|---|
| A: | I do. I have flashes of pains that go through my wrists and up through my shoulders. . . . |
| Q: | Okay. And what about sitting? How long can you sit at one time? [You have b]een sitting here about 30 minutes. |
| A: | It's -- this part doesn't bother me, it's just, it -- when I'm confined to stay, like, you know -- and I can't move around -- so I guess I would have trouble sitting for a hour at a time. |
| Q: | And what would you have to do after you sat for an hour? |
| A: | I would . . . I would get, like, cramps in my legs and back. |
| Q: | And do you have to get up and walk around and -- |
| A: | Yeah. |
| Q: | How long do you have to walk around? |
| A: | Just for, like, at least two or three minutes -- |
| Q: | Okay. |
| A: | -- you know, just to get my circulation. |

(Administrative Record at 54-57.)

Harmon's attorney also questioned Harmon about his daily activities. Harmon testified that he lives with his mother, and she helps him out "all the time." Harmon reported that he takes the garbage out, washes dishes, and helps with groceries, but his mother does all of the laundry. Additionally, Harmon stated that at the time of the hearing, he had recently started taking classes at Hawkeye Community College in Waterloo, Iowa, to try to "better [him]self." However, he stated that he was having difficulty with reading comprehension, understanding his classes, and math. He testified that he was generally failing his classes, but nonetheless was trying his best.

### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Jeff L. Johnson with a hypothetical for an individual who is limited:

6

to light work as that term is defined in the Dictionary of Occupational Titles, and add some non-exertional limits, namely that the worker is able to do only simple and routine and repetitive work that does not require close attention to detail on the jobs and does not require the use of any real independent judgment on the job. It's very simple, repetitive work where there aren't any significant changes to -- in a work environment.

(Administrative Record at 64-65.)  The vocational expert testified that under such limitations, Green could perform his past work as a poultry eviscerator.

Harmon's attorney also questioned the vocational expert.  Harmon's attorney inquired:

Q:    . . . I assume, Mr. Johnson, that if the person were to work at a slow pace for up to a third of the day, that would also preclude competitive employment?
A:    Yes, it would.

(Administrative Record at 68.)

### C. Harmon's Medical History

On July 16, 2008, Harmon was referred to Robert Welshons, PA-C, for a consultative examination.  Welshons noted that Harmon complained of "weakness secondary to discomfort, so that taking wet and heavy clothes out from the laundry will be difficult, so that he will often accept help for this chore. . . . He states he will get cramping into the hands and sometimes will spasm, making dexterity with the fingers difficult."[2]  Upon examination, Welshons noted bilateral carpal tunnel syndrome and shoulder pain.  However, Welshons also noted that Harmon never maximized medical treatment for either ailment.  Welshons opined that:

Because of his carpal tunnel he should avoid positions where he has to lift moderate weights and to do that frequently.  He has no troubles with standing, walking or moving about.  He

_____

[2] Administrative Record at 346.

could sit or do any of these activities for extended periods of time. He has no troubles with speaking, hearing or handling objects, but he would have some trouble with dexterity, secondary to the carpal tunnel. He would also have problems in a position that required repetitive activity or required him to hold his hands in one position for long periods of time. He may have some trouble with comprehension and may have to hear instructions or read instructions repeatedly until they are understood fully. He has no troubles with stooping, kneeling or crawling, but because of his back pain he would do well to avoid those activities for extended or repeated periods of time. He has no restrictions to work environments regarding dust, fumes, temperatures or other hazards.

(Administrative Record at 347.)

On August 12, 2008, Disability Determination Services ("DDS") referred Harmon to Dr. Carroll D. Roland, Ph.D., for a psychological evaluation. At the evaluation, Harmon reported that he "is unable to secure and maintain fulltime competitive employment because of, 'a condition with my hands . . . carpel tunnel syndrome . . . they lock up on me.' [Harmon] further states, 'I have trouble remembering things.'"[3] Dr. Roland noted that Harmon graduated from a special education program at East High School in Waterloo, Iowa. Harmon described himself as a below average student who got along satisfactorily with his peers and teachers. Upon examination, Dr. Roland concluded that:

> Harmon . . . does not appear to have any significant psychopathology. His primary obstacle to competitive employment is his reported bilateral carpel tunnel syndrome. Memory and intellect are sufficient for entry level employment.

(Administrative Record at 359.)

_____

[3] *Id.* at 355.

On August 26, 2008, Dr. Dee Wright, Ph.D., reviewed Harmon's medical records and provided DDS with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Harmon. On the Psychiatric Review Technique assessment, Dr. Wright diagnosed Harmon with dementia due to a head injury by history. Dr. Wright determined that Harmon had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Wright determined that Harmon was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Wright concluded that:

> The preponderance of evidence reviewed does support some cognitive limitations of function in [Harmon's] case. [Harmon] would have difficulties consistently performing very complex details and rapid shifts in alternating attention. Despite these restrictions, [Harmon] is able to sustain sufficient concentration and attention to perform noncomplex, repetitive, and routine cognitive activities without significant limitations of function.

> The preponderance of the evidence reviewed does not support serious limitations of function with social interaction. . . . [Harmon] possesses sufficient social skills to sustain short-lived, superficial interaction with others in appropriate ways when it is in his perceived interest to do so.

(Administrative Record at 362.)

On June 14, 2010, Harmon met with Dr. Naga Nadipuram, M.D., for a disability evaluation. Harmon told Dr. Nadipuram that he was applying for disability benefits due to memory loss, back pain, and "some" learning disability. Dr. Nadipuram further noted that:

9

> Upon questioning he is able to do his own [activities of daily living] and complains of some numbness in both the hands and tends to drop objects a lot. He has not had any surgery for carpal tunnel possibly in both the hands because he has no insurance. [Harmon] also states that his mother manages money for him and he can stand for 10-15 minutes . . . without any problems and walks for about two blocks. He can do a working job only for about 30 minutes then he has difficulty with [his] back and has to move around. . . . While driving [Harmon] cannot sit for more than 30 minutes since he gets severe back pain. No work up has been done to check what kind of back problems [he] has had.

(Administrative Record at 404.) Upon examination, Dr. Nadipuram diagnosed Harmon with history of a head injury at age six, uncontrolled hypertension, and osteoarthritis in his upper and lower extremities. Dr. Nadipuram recommended physical therapy and pain management as treatment.

On June 21, 2010, Harmon was referred by DDS to Dr. Roland for a second psychological evaluation. At the evaluation, Harmon reported that he:

> is unable to secure and maintain fulltime competitive employment because of, "a condition with my hands . . . carpel tunnel syndrome . . . they lock up on me." [Harmon] further states, "I have trouble remembering things . . . I drop things when I'm holding them. I have back pain . . . my memory is like I forget things if I don't write them down . . . I have problems comprehending, have to read things over and over."

(Administrative Record at 406.) Upon examination, Dr. Roland diagnosed Harmon with carpal tunnel syndrome by history, head trauma by history, and low back pain by self-report. Dr. Roland concluded that:

> Harmon . . . does not appear to have any significant psychopathology. His primary obstacle to competitive employment is his reported bilateral carpel tunnel syndrome. Intellect is sufficient for entry level employment.

(Administrative Record at 410.)

On July 8, 2010, Dr. Lon Olsen, Ph.D., reviewed Harmon's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Harmon. On the Psychiatric Review Technique assessment, Dr. Olsen diagnosed Harmon with a memory impairment and history of alcohol abuse/dependence. Dr. Olsen determined that Harmon had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Olsen determined that Harmon was markedly limited in his ability to understand and remember detailed instructions and carry out detailed instructions. Dr. Olsen also determined that Harmon was moderately limited in his ability to make simple work-related decisions and set realistic goals or make plans independently of others. Dr. Olsen concluded that:

> [Harmon's] allegations about his functional limitations are credible and his presentation is consistent. . . . [H]e did receive special education services throughout school and showed impaired auditory memory on adult testing (in 2007). . . . All of that being said, [Harmon] is capable of 2- and 3-step tasks that do not require independent planning or decision making. He will likely require that spoken instruction be repeated several times, but will be able to learn much more effectively by watching a demonstration of tasks he was to perform.

(Administrative Record at 415.)

On June 1, 2012, approximately six weeks after the ALJ's decision was filed, Harmon was referred by his attorney to Catherine S. Edwards, M.Ed., for cognitive, adaptive behavior, and academic assessment. Upon administration of multiple tests and examination, Edwards diagnosed Harmon with a mental disorder due to traumatic brain injury as a six-year-old, and borderline intellectual functioning. Edwards opined that:

[Harmon's] cognitive abilities are best described as Borderline Intellectual Functioning. [His] academic skills are consistent with his overall cognitive functioning. [Harmon] continues to exhibit the following effects of his traumatic brain injury: problems with concentration; organization/executive functioning; memory; cognitive fatigue; ability to work effectively with supervisors and in response to stressors. [He] will have difficulty performing jobs which require rapid and repetitive motor output, sustained focus and attention, work in high stimulus environments, and which require long periods of self direction, frequently changing tasks, and rapid problem solving.

(Administrative Record at 474.) Edwards suggested that Harmon would be most suited to working as direct care staff, housekeeping, laundry, or dietary staff in a nursing facility. Edwards also suggested that Harmon would be capable of working in housekeeping or laundry at a hotel.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Harmon is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

(1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process);

*Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R.
§ 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of
disability, the process ends and the claimant is determined to be not disabled." *Pelkey v.*
*Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting
*Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful
> activity. If so, the claimant is not disabled. Second, the ALJ
> determines whether the claimant has a severe medical
> impairment that has lasted, or is expected to last, at least
> 12 months. Third, the ALJ considers the severity of the
> impairment, specifically whether it meets or equals one of the
> listed impairments. If the ALJ finds a severe impairment that
> meets the duration requirement, and meets or equals a listed
> impairment, then the claimant is disabled. However, the
> fourth step asks whether the claimant has the residual
> functional capacity to do past relevant work. If so, the
> claimant is not disabled. Fifth, the ALJ determines whether
> the claimant can perform other jobs in the economy. If so, the
> claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant
"bears the burden of demonstrating an inability to return to [his] or her past relevant
work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*,
524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden
shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC
[(residual functional capacity)], age, education, and work experience, there [are] a
significant number of other jobs in the national economy that [the claimant] could
perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir.
2005)). The RFC is the most an individual can do despite the combined effect of all of his
or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for
determining "'a claimant's RFC based on all the relevant evidence including the medical

records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that Harmon had not engaged in substantial gainful activity since March 3, 2010. At the second step, the ALJ concluded from the medical evidence that Harmon had the following severe impairments: osteoarthritis in the extremities, obesity, and residuals of a head injury as a child. At the third step, the ALJ found that Harmon did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Harmon's RFC as follows:

> [Harmon] has the residual functional capacity to perform "light" work . . . except he is limited to simple, routine, repetitive work that does not require close attention to detail or the use of independent judgment on the job. He requires a listing of the job tasks or sequence of tasks using simple words that could be posted on a bulletin board, clipboard, or a small printed card but requires no more than ordinary supervision or intervention by a supervisor.

(Administrative Record at 17.) Also at the fourth step, the ALJ determined that Harmon was capable of performing his past relevant work as a poultry eviscerator. Therefore, the ALJ concluded that Harmon was not disabled.

### B. Objections Raised By Claimant

Harmon argues that the ALJ's RFC assessment is flawed because the ALJ failed to find any limitations with the use of his hands, sitting, standing, walking, or cognition. Specifically, Harmon argues that he has difficulty gripping and holding objects due to carpal tunnel syndrome. Harmon also asserts that he can only sit, stand, and walk for short periods of time. As for his cognitive limitations, Harmon maintains that he has difficulty with concentration, memory, and cognitive fatigue. Additionally, Harmon

argues that because the ALJ's RFC assessment is flawed, the ALJ's hypothetical questions to the vocational expert were also flawed by not incorporating all of his limitations.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

An ALJ also has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618; *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an

assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Furthermore, hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Having reviewed the entire record, the Court finds that the ALJ properly considered Harmon's medical records, observations of treating physicians, and Harmon's own description of his limitations in making the ALJ's RFC assessment for Harmon.[4] *See Lacroix*, 465 F.3d at 887. For example, Harmon correctly points out that in 2008, a consultative examiner indicated that he had difficulties with bilateral carpal tunnel syndrome.[5] However, Harmon ignores the fact that the same consultative examiner also noted that Harmon did not maximize his medical treatment or use medication, and was able to hold several jobs over time, including working at the time of the evaluation.[6] Moreover, Harmon also relies on the opinions of Dr. Nadipuram, another consultative

---

[4] *See* Administrative Record at 18-23 (discussion in the ALJ's decision of the relevant medical evidence and the credibility of Harmon's subjective allegations of disability).

[5] *See* Administrative Record at 347.

[6] *Id.*

examiner, but Dr. Nadipuram did not diagnose Harmon with carpal tunnel syndrome.[7]
Furthermore, while Dr. Nadipuram mentioned that Harmon complained of carpal tunnel
syndrome, in his decision, the ALJ pointed out that:

> Examination by Dr. Nadipuram revealed [Harmon] to have
> normal grip with strength of 10 out of 10 bilaterally; he did
> not have any decreased sensations in either of the extremities.
> Dr. Nadipuram noted that it was *possible* that [Harmon's] on
> and off parethesias in both the hands *could be* from carpal
> tunnel. . . . [B]ut his range of motion in upper and lower
> extremity was quite within normal limits. No muscle
> weakness was noted in either of the extremities. . . . [T]he
> undersigned notes that Dr. Nadipuram did not provide any
> limitations that may flow from [Harmon's] diagnoses.

(Administrative Record at 19; emphasis added.) The Court finds that substantial evidence
supports the ALJ's conclusion that Harmon's claim of carpal tunnel syndrome is not
supported by objective testing or findings. Accordingly, the Court determines that the
ALJ's RFC assessment with regard to Harmon's ability to use his hands is not flawed. *See
Moore*, 572 F.3d at 522 ("'If there is substantial evidence to support the Commissioner's
conclusion, we may not reverse even though there may also be substantial evidence to
support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

Contrary to Harmon's claim of limitations on his ability to sit, stand, and walk, and
his claim that Dr. Nadipuram's opinions support this claim, the Court finds no support for
this contention. While Dr. Nadipuram notes that Harmon *claimed* he could only stand for
10-15 minutes before needing to move around, walk 2 blocks, and sit for 30 minutes in a
car, Dr. Nadipuram *did not find* any of these limitations in his disability evaluation.[8]
Moreover, the Commissioner correctly points out that:

---

[7] *See* Administrative Record at 405.

[8] *Id*. at 404-405.

> [Harmon] suggests the ALJ erred because Dr. Nadipuram had
> found [he] had specific physical limitations, such as a need to
> alternate sitting and standing and a need to limit walking. The
> document to which [Harmon] cites, however, is not part of
> Dr. Nadipuram's typed opinion but is the request page for the
> evaluation, and constitutes a review of [Harmon's] complaints.

Commissioner's Brief (docket number 11) at 16.[9] The handwritten notes referred to by

Harmon do not constitute substantial evidence, and having reviewed the entire record, the

Court finds no opinion evidence from any medical source which corresponds with the

handwritten notes, let alone any opinions placing limitations on Harmon's ability to stand,

sit, or walk. *See Casey*, 503 F.3d at 697 (Providing that "the RFC is ultimately a medical

question that must find at least some support in the medical evidence of record.").

Lastly, with regard to Harmon's claim of cognitive limitations, the ALJ properly

considered the issue and thoroughly addressed the medical source opinions related to

Harmon's cognitive abilities.[10] Specifically, Drs. Roland, Olsen, and Weis all found

Harmon's cognitive limitations to be non-severe and not preclusive of the ability to

perform simple, routine, repetitive work.[11] The Court determines that the ALJ's RFC

assessment with regard to Harmon's cognitive abilities is not flawed. *See Moore*, 572

F.3d at 522 ("'If there is substantial evidence to support the Commissioner's conclusion,

we may not reverse even though there may also be substantial evidence to support the

opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

In summary, having reviewed the entire record, the Court finds that the ALJ

properly considered Harmon's medical records, observations of treating physicians, and

---

[9] *See also* Administrative Record at 403 (handwritten notes not associated with
Dr. Nadipuram's final disability evaluation).

[10] *See* Administrative Record at 19-21 (discussing the opinions of Dr. Roland,
Dr. Olsen, and Dr. Weis).

[11] *Id.*

Harmon's own description of his limitations in making his RFC assessment for Harmon.[12] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

Because the Court has determined that the ALJ thoroughly considered and discussed both the medical evidence and Harmon's testimony in determining Harmon's RFC assessment; and determined the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole, the Court concludes that the ALJ's hypothetical questions to the vocational expert were not flawed. Moreover, because the hypothetical questions posed to the vocational expert by the ALJ were based on the ALJ's findings and conclusions, the Court finds that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Therefore, the ALJ's hypothetical questions were sufficient and the decision of the ALJ is affirmed.

## VI. CONCLUSION

The Court finds that the ALJ fully and fairly developed the record with regard to the medical evidence in the case, and made a proper RFC assessment for Harmon. The

---

[12] *See* Administrative Record at 18-22 (ALJ's discussion of the relevant medical evidence and the credibility of Harmon's subjective allegations of disability).

Court also finds that the ALJ's hypothetical questions to the vocational expert properly included those impairments substantially supported by the record as a whole. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## *VII. ORDER*

1.    The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.    Plaintiff's Complaint (docket number 1) is **DISMISSED** with prejudice; and

3.    The Clerk of Court is directed to enter judgment accordingly.

DATED this 27th day of November, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA